OPINION
{¶ 1} Defendant-Appellant, Keeshawn A. Gibson, appeals the judgment of the Allen County Court of Common Pleas convicting him of aggravated burglary with a firearm specification, aggravated robbery with a firearm specification, and felonious assault with a firearm specification. On appeal, Gibson asserts that the trial court's verdict that he was guilty of aggravated burglary is against the manifest weight of the evidence and that the evidence was legally insufficient to support the trial court's verdict on all three counts of the indictment. Finding that the trial court's verdict was not against the manifest weight of the evidence and that the evidence presented was legally sufficient to support the trial court's verdict, we affirm the judgment of the trial court.
 {¶ 2} In September of 2004, Gibson was arrested for felonious assault in violation of R.C. 2903.11(A)(1). In October of 2004, Gibson was indicted for aggravated burglary with a firearm specification in violation of R.C. 2911.11(A)(2), a felony of the first degree; aggravated robbery with a firearm specification in violation of R.C. 2911.01(A)(1), a felony of the first degree; and, felonious assault with a firearm specification in violation of R.C. 2903.11(A)(2), a felony of the second degree. Gibson entered a plea of not guilty to all three charges and the specifications.
 {¶ 3} In February of 2005, a jury trial was held. At trial, the following evidence was presented. Patrolman Andrew C. Green of the Lima Police Department testified that on September 1, 2004, at about 1:25 a.m., he was dispatched to the 700 block of Broadway, in Lima, Ohio, in reference to a black male saying he had been shot. Upon arrival, Patrolman Green observed a black male, later identified as Joseph Walls, walking off the porch at 759 Broadway towards him wearing blood soaked clothes. Walls told Patrolman Green that he had been at his home at 775 Broadway when he had been shot by someone that he called "Blue." Walls also told Patrolman Green that a second person, named "Keeshawn", was with Blue and that Keeshawn and Blue could be driving in a red Blazer or Jimmy. Additionally, Walls told Patrolman Green that when he left 775 Broadway, he believed that the two suspects were still inside. Patrolman Green then testified that other patrolmen secured Walls' residence and found no one inside. Patrolman Green also testified that Walls was transported to the hospital by ambulance. Finally, on cross-examination, Patrolman Green stated that he did not have any direct contact with Gibson that evening.
 {¶ 4} Patrolman Frank Vaccaro of the Lima Police Department testified that he also responded to the shooting at 775 Broadway, as back up for the district unit. After Patrolman Vaccaro had been at the crime scene for fifteen to twenty minutes, he noticed a red Chevy Blazer driving by that matched the description of the suspects' vehicle. The Blazer did not stop at the crime scene, where there was a visible police presence, but kept driving down the street. After noticing the Blazer, Patrolman Vaccaro entered his cruiser and conducted a traffic stop. Gibson was driving the Blazer and Katrina Morris was the front seat passenger. Both Gibson and Morris were taken to the police station for questioning, and the Blazer was impounded at the Lima Police Department.
 {¶ 5} Identification Officer Kenneth Whitney of the Lima Police Department testified that he responded to the shooting at the 700 block of Broadway. Upon arrival, Officer Whitney was told by another officer that Walls had been shot at 775 Broadway and then Walls went to 759 Broadway to seek help. Officer Whitney photographed what appeared to be fresh blood at 759 Broadway, on the front walkway leading up to the house, blood on the steps, on the porch column, on the floor of the porch, and on the outside of the front door. Additionally, Officer Whitney went to 775 Broadway where he observed and photographed blood droplets on the front porch and outside of the front entry door. Upon entering 775 Broadway, Officer Whitney noticed and photographed blood on the carpet in the entry way, blood on the north wall, and blood on the surface of the door near the bottom. Also, while inside 775 Broadway, Officer Whitney photographed and collected, among other things, a spent shell casing.
 {¶ 6} Later that morning, Officer Whitney was asked to photograph the Blazer in the basement of the Lima Police Department. In the Blazer, Officer Whitney found a live round of ammunition in the cup holder of the center console. Officer Whitney also testified that the shell casing found at the scene of the crime and the live round of ammunition found in the Blazer's console were both CCI brand, nine millimeter Luger caliber and contained stamps on each indicating that they were identical.
 {¶ 7} Brehanda Fuller, who testified for the State, stated that she was acquainted with Gibson, having met him through her cousin. Fuller remembered that on the day that Walls was shot, she overheard Gibson say that he had "to hit a lick." Fuller testified that "to hit a lick" was slang for "to rob someone." (Trial Tr. p. 153-54).
 {¶ 8} Next, Walls testified for the State. Walls testified that he had been good friends for several years with Antwayne Brown, who was called "Blue." Walls was also acquainted with Gibson, having met him in the summer of 2004. Walls also testified that approximately, two months prior to the shooting, Walls introduced Blue to Gibson. Additionally, Walls testified that Gibson moved to a residence on Broadway approximately three weeks prior to the shooting.
 {¶ 9} Walls further stated that on the night before the shooting, shortly before midnight, he was at his residence with his friend Steve Taggi. Walls testified that about an hour or so later, he and Taggi were watching a movie when his back doorbell rang. Walls testified that he noticed Gibson at his backdoor and instructed Gibson to come to the front door. Walls stated that after Gibson arrived at the front door, he let Gibson into his house. Walls continued that upon entering the house, Gibson started talking to him about a small amount of crack cocaine that he had given Gibson three weeks before, which Gibson was to replace. Then, Walls testified that he left the room to do something and when he returned Taggi told him that Gibson had taken a motorized scooter from his kitchen and was riding it around the block. Walls then testified that when he and Taggi walked outside, Gibson was returning with the scooter, on which Gibson had broken a wheel. Walls testified that he told Gibson to put the scooter back in the house, and that all three walked back inside. Walls stated that at that time, Gibson told him that he had come over intending to pay him the cocaine he was owed, but that he did not have enough cocaine with him to do so. Walls then stated that Gibson ended up giving him a small quantity of cocaine, and then Gibson left the house. Further, Walls testified that when Gibson was leaving, he noticed loud music playing from Gibson's truck and he asked Gibson who was with him, to which Gibson replied "Blue." Walls also noted that after Gibson left, Taggi went to a gas station to get cigarettes.
 {¶ 10} Walls continued that when Taggi left, he locked the front door behind him, and that the back door was already locked. Walls testified that he then sat down to watch television when his front doorbell rang. Walls testified that he walked to the front door and saw Gibson looking through the window of the front door. Walls continued that through the door, Gibson had asked him if he had left his phone in his house. Walls testified that he unlocked the door and that as he opened the door; Gibson hit the door hard, trying to knock him down or out of the way and forced his way into his house. Further, Walls testified that when Gibson entered his house, he noticed that Blue was behind Gibson, that Blue had a gun in his hand, and that Blue was also trying to force his way into Walls' house. Walls testified that he began to struggle with Blue attempting to get the gun out of Blue's hands, but he was hit in the back of the head and Blue gained control of him and placed the gun to his head. Walls testified that Blue then asked him "Bitch, where's it at?" to which he responded, "I don't know what you talking about." (Trial Tr. p. 201). Walls testified that after he responded, Blue began shooting him. Walls noted that he was shot three times, once in each leg and once in the back, and after the three shots, Blue reached around him from behind and shot him a fourth time in the chest. Additionally, Walls testified that Blue took approximately one-hundred dollars from his pocket, and that Blue left his house in the same direction that Gibson had left. Finally, Walls testified that after he laid the ground for a few seconds, he pulled himself up and made it out the front door, where he ran and staggered to a neighboring house to get help.
 {¶ 11} The State then called Steve Taggi. Taggi testified that he was friends with Walls, and that he was familiar with Gibson and Blue. Taggi stated that he was at Walls' home on Broadway the night before the shootings and that he and Walls were watching movies and hanging out. Taggi also noted that sometime during that evening, Gibson showed up and talked to Walls. Taggi continued that Gibson took a scooter belonging to Walls for a ride. Taggi then testified that after Gibson took the scooter for a ride, he walked outside Walls' house to wait for Gibson to come back. Additionally, Taggi testified that while he was outside, he observed Gibson's red Blazer parked in Walls' driveway and observed Blue in the Blazer listening to music. Taggi stated that after Gibson had returned with the scooter, Gibson gave Walls some crack cocaine that Gibson had owed Walls, and then Gibson left. Taggi then testified that he left to go get cigarettes at a gas station, and when he returned he found police all over the place and yellow tape all around Walls' home.
 {¶ 12} Following the above evidence in the State's case-in-chief, Gibson took the stand in his own defense. Gibson stated that Blue was not in his car when he went to Walls' home and was riding the scooter. Gibson testified that after he left Walls' house, he returned a few minutes later because he believed he had left his phone there. Gibson then stated that he knocked on the door and Walls let him in to look for his phone. While Gibson was looking for his phone, he heard Walls screaming. Gibson then testified that he saw Walls being struck by a pistol but could not see who was holding the pistol. Gibson then stated that he left Walls' house out the back door after he saw Walls get hit in the head. Finally, Gibson stated that after he left Walls' house, he went and picked up his girlfriend and the two of them drove back down Broadway past Walls' home, where they saw all of the police.
 {¶ 13} The jury found Gibson guilty of all three charges and the firearm specifications. Gibson was sentenced to nine years on the aggravated burglary conviction, nine years on the aggravated robbery conviction, and eight years on the felonious assault conviction. Additionally, Gibson was sentenced to a mandatory three year prison term on each of the firearm specifications. The trial court merged the sentences for the firearm specifications, but ordered that the prison terms for the primary convictions all be served consecutively, and that they be served consecutively to the sentence for the firearm specifications. In total, Gibson was sentenced to twenty-nine years
 {¶ 14} It is from this judgment Gibson appeals, presenting the following assignments of error:
 Assignment of Error No. I THE TRIAL COURT'S VERDICT THAT APPELLANT WAS GUILTY OFBURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
 Assignment of Error No. II APPELLEE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THEVERDICT OF THE TRIAL COURT
 {¶ 15} In his first and second assignments of error, Gibson asserts that his conviction was not supported by sufficient evidence and that his conviction for aggravated burglary was against the manifest weight of the evidence. Because, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," we will address each separately and out of order. State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus.
 Assignment of Error No. II {¶ 16} In his second assignment of error, Gibson asserts that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as recognized in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 17} As noted above, Gibson was charged with and convicted of aggravated burglary with a firearm specification in violation of R.C. 2911.11(A)(2), a felony of the first degree; aggravated robbery with a firearm specification in violation of R.C.2911.01(A)(1), a felony of the first degree; and, felonious assault with a firearm specification in violation of R.C.2903.11(A)(2), a felony of the second degree. We will review each conviction separately.
 {¶ 18} Gibson first asserts that the evidence was insufficient to support his conviction of aggravated burglary with a firearm specification in violation of R.C. 2911.11(A)(2). R.C. 2911.11(A)(2) provides:
No person, by force, stealth, or deception, shall trespass inan occupied structure or in a separately secured or separatelyoccupied portion of an occupied structure, when another personother than an accomplice of the offender is present, with purposeto commit in the structure or in the separately secured orseparately occupied portion of the structure any criminaloffense, if any of the following apply:
* * *
(2) The offender has a deadly weapon or dangerous ordnance onor about the offender's person or under the offender's control.
 {¶ 19} On appeal, Gibson argues that the record fails to demonstrate that he committed aggravated burglary. As noted above, Walls testified that on September 1, 2004, while he was opening the door to allow Gibson to enter his house to look for his phone, Gibson hit the door hard and forced his way into the house. Walls also stated that he was struggling with Blue to wrestle a gun out of Blue's hands, but while he was struggling with Blue, he was hit in the back of the head allowing the gun to be placed against his head. Finally, Walls testified that he had approximately one-hundred dollars taken from him. Therefore, viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we find that there was legally sufficient evidence to support Gibson's conviction of aggravated burglary in violation of R.C. 2911.11(A)(2).
 {¶ 20} Next, Gibson asserts that the evidence was insufficient to support his conviction of aggravated robbery in violation of R.C. 2911.01(A)(1). R.C. 2911.01(A)(1) provides:
No person, in attempting or committing a theft offense, asdefined in section 2913.01 of the Revised Code, or in fleeingimmediately after the attempt or offense, shall do any of thefollowing:
 (1) Have a deadly weapon on or about the offender's person orunder the offender's control and either display the weapon,brandish it, indicate that the offender possesses it, or use it;
 {¶ 21} On appeal, Gibson argues that the record fails to demonstrate that he committed aggravated robbery. As noted above, Walls testified that on September 1, 2004, Gibson and Blue forced their way into his home. Walls also stated that he was struggling with Blue to wrestle a gun out of his hands, but while he was struggling with Blue, he was hit in the back of the head allowing the gun to be placed against his head. Finally, Walls testified that he had approximately one-hundred dollars taken from him. Therefore, viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we find that there was legally sufficient evidence to support Gibson's conviction of aggravated robbery in violation of R.C. 2911.01(A)(1).
 {¶ 22} Further, Gibson asserts that the evidence was insufficient to support his conviction of felonious assault in violation of R.C. 2903.11(A)(2). R.C. 2903.11(A)(2) provides:
No person shall knowingly do either of the following:
* * *
(2) Cause or attempt to cause physical harm to another or toanother's unborn by means of a deadly weapon or dangerousordnance.
 {¶ 23} On appeal, Gibson argues that the record fails to demonstrate that he committed felonious assault. As noted above, Walls testified that on September 1, 2004, while Walls was home alone, Gibson and Blue forced their way into his home. Walls stated that the front door was the only way to enter, because all of the other entrances were locked. Walls also stated that he was struggling with Blue to wrestle a gun out of his hands, but while he was struggling with Blue, he was hit in the back of the head allowing the gun to be placed against his head. Finally, Walls testified that he was shot four times. Therefore, viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we find that there was legally sufficient evidence to support Gibson's conviction of felonious assault in violation of R.C. 2903.11(A)(2).
 {¶ 24} Finally, Gibson asserts that there was insufficient evidence to support the firearm specifications, as listed in R.C.2941.145(A). R.C. 2941.145(A) provides in pertinent part:
Imposition of a three-year mandatory prison term upon anoffender under division (D)(1)(a) of section 2929.14 of theRevised Code is precluded unless the indictment, count in theindictment, or information charging the offense specifies thatthe offender had a firearm on or about the offender's person orunder the offender's control while committing the offense anddisplayed the firearm, brandished the firearm, indicated that theoffender possessed the firearm, or used it to facilitate theoffense.
 {¶ 25} On appeal, Gibson argues that the record fails to demonstrate that he controlled the firearm used to shoot Walls, because Walls testified that Blue shot him. As noted above, there was no specific testimony which alleged that Gibson actually possessed a firearm during the commencement of the offenses. However, under Ohio Supreme Court's decision in State v.Chapman, Gibson is subject to the mandatory three-year term of incarceration imposed, under R.C. 2929.14(D)(1)(a)(ii), "regardless of whether he was the principal offender or an unarmed accomplice." Chapman (1986), 21 Ohio St.3d 41, 41, syllabus.[1] Here, there is undisputed evidence that Walls was shot four times, during the commencement of the offenses. Thus, even if Gibson was unarmed during the commission of the offenses, since he was an accomplice, he is subject to the mandatory three-year term of incarceration.
 {¶ 26} Accordingly, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated burglary in violation of R.C. 2911.11(A)(2), aggravated robbery in violation of R.C. 2911.01(A)(1), felonious assault in violation of R.C. 2903.11(A)(2), and the firearm specifications related to each of the above mentioned violations proven beyond a reasonable doubt.
 {¶ 27} Accordingly, Gibson's second assignment of error is overruled.
 Assignment of Error No. I {¶ 28} In his first assignment of error, Gibson argues that his conviction for aggravated burglary was against the manifest weight of the evidence. Specifically, Gibson argues that Walls invited him to enter Walls' residence to search for his phone, and that Walls testified that Blue shot and robbed Walls.
 {¶ 29} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 30} As noted above, Walls testified that on September 1, 2004, while he was opening the door to allow Gibson to enter his house to look for his phone, Gibson hit the door hard and forced his way into Walls' house. However, Gibson argues that his testimony shows that Walls invited him into Walls' residence to look for his phone. Additionally, Walls testified that Blue had taken approximately one-hundred dollars taken from him.
 {¶ 31} While Gibson is correct to point out that Walls' testimony was in conflict with his own testimony and that Walls testified that Blue took the money from him, all of that information was before the trier of fact. In State v. Awan
(1986), 22 Ohio St.3d 120, 123, the Ohio Supreme Court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear witnesses and observe their demeanor. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the trier of fact." Id.
 {¶ 32} The credibility of Walls' and Gibson's testimony was an issue for the trier of fact. Obviously, the jury opted to believe and accept Walls' version of the events surrounding the incident. Without more, we will not second guess the conclusion of the trier of fact.
 {¶ 33} Accordingly, Gibson's first assignment of error is overruled.
 {¶ 34} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant, P.J. and Shaw, J., concur.
[1] We note that the Court in State v. Chapman considered an unarmed defendant who was convicted of aggravated robbery, in violation of R.C. 2911.01, and a firearm specification.Chapman, 21 Ohio St.3d at 42-43. We do not find any reason not to extend the reasoning in Chapman to the case sub judice and Gibson's convictions of aggravated burglary in violation of R.C.2911.11(A)(2) and felonious assault in violation of R.C.2903.11(A)(2).