[Cite as *State v. Houston*, 2014-Ohio-3911.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100655

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER D. HOUSTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573551-A

**BEFORE:** Blackmon, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 11, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Alison Foy
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶1} Appellant Christopher D. Houston ("Houston") appeals his conviction for aggravated robbery and assigns the following four errors for our review:

> I. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motion for acquittal.

> II. The convictions are against the manifest weight of the evidence.

> III. Appellant was deprived of the effective assistance of counsel because there was no objection to the admission of state's Exhibit 2 even though the state failed to establish proper chain of custody.

> IV. Appellant's Sixth Amendment Rights were violated because appellant's case should have been transferred to the mental health court.

{¶2} Having reviewed the record and relevant facts, we affirm Houston's convictions. The apposite facts follow.

{¶3} The Cuyahoga County Grand Jury indicted Houston for aggravated robbery with prior notification and a repeat violent offender specification attached. Houston waived his right to a jury; the matter proceeded before the bench.

{¶4} On the evening of April 15, 2013, the victim was walking to the bus station located at West 25th Street and Lorain Avenue to purchase a bus ticket for his ride to work the next day. After stopping at a convenience store to purchase a drink, the victim noticed Houston walking on the opposite side of the street. Several minutes later, Houston walked up behind the victim and placed a gun to the side of the victim's face. Houston ordered the victim to empty his pockets and to "not try anything."

{¶5} The victim stated that at that point, traffic was approaching them, which distracted Houston. The victim took this opportunity to punch Houston a few times and

attempt to wrestle the gun from him. After retrieving the weapon, the victim threw the gun over a fence. Houston continued to act aggressively so the victim pulled out a pocket knife to warn Houston to stay on the ground. The victim then flagged down an RTA bus and got on. As the bus drove away, Houston banged on the driver's side window and yelled that it was he who had been robbed. The bus driver called the police and took the victim to the West 25th Street rapid station.

{¶6} The police met the victim at the bus station. A description of the assailant was broadcasted. The officers proceeded to take the victim back to the location of the attack. On the way, they saw another patrol car near the scene with officers attempting to subdue Houston. The victim identified Houston as the robber.

{¶7} Houston told officers he had a gun on him, but it was fake. A gun was removed from Houston's waistband. The police confirmed that it was a BB gun. Officer O'Neill stated that on the way to the jail, Houston contended he was the victim. She noted that he looked like he had been punched in the face. Once they arrived at the jail, Houston's demeanor changed. She heard him use a racial epithet and say the victim was "lucky he's alive."

{¶8} Houston testified in his own defense and claimed that the victim was the aggressor. According to Houston, he was in the area of West 25th Street to attend a party. The person that was supposed to drive him home was drunk; therefore, Houston decided to take a bus home. On his way to the station, he saw the victim and asked him if he could use his cell phone because he was going to try and call someone to pick him up. He claimed he did not use his own cell phone because there were no minutes left.

**{¶9}** Houston stated that the victim looked at him like Houston was "crazy" and "looked scared." Houston threatened the victim that he could "take the phone if he wanted to." The victim then began to beat him up. Although Houston's BB gun was tucked in his waistband, he claimed he never took it out.

**{¶10}** The trial court found Houston guilty of aggravated robbery with prior notification and a repeat violent offender specification. The court sentenced Houston to eight years in prison.

### Sufficiency of the Evidence

**{¶11}** In his first assigned error, Houston argues his conviction for aggravated robbery was not supported by sufficient evidence.

**{¶12}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶13}** In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995).

{¶14} Houston was convicted of aggravated robbery, which is defined in R.C. 2911.01(A)(1) as:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *.

{¶15} Houston argues the evidence was insufficient to convict him of aggravated robbery because the state failed to present sufficient evidence showing the gun used in the robbery was a "deadly weapon."

{¶16} R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon."

{¶17} There is no doubt that the BB gun in question was used as a weapon because the victim stated that Houston held it to his head. The only question is whether the BB gun was capable of inflicting death. Although it is not a firearm, a BB gun can be a deadly weapon if the BB is expelled at a sufficient rate of speed. *State v. Brown*, 101 Ohio App.3d 784, 788, 656 N.E.2d 741 (1st Dist.1995). The Ohio Supreme Court, in dicta, acknowledged that:

> [o]ne may use a BB gun (*State v. Ewing* [Mar. 27, 1980], Cuyahoga App. No. 41080, unreported), or a pellet gun (*State v. Scales* [Sept. 27, 1979], Cuyahoga App. No. 39763, unreported) in the commission of a theft offense and be found guilty of aggravated robbery.

*State v. Gaines*, 46 Ohio St.3d 65, 68, 545 N.E.2d 68 (1986).

{¶18} Courts agree that regardless of whether a BB or pellet is powerful enough to cause death, a BB gun can be a deadly weapon because the body of the gun itself can be used to bludgeon. *State v. Hicks*, 14 Ohio App.3d 25, 469 N.E.2d 992 (8th Dist.1984); *State v. Ginley*, 8th Dist. Cuyahoga No. 90724, 2009-Ohio-4701. The gun's capability as a deadly weapon is a factual issue to be determined by the trier of fact. *Brown* at 788.

{¶19} Houston argues that because he did not threaten to use the gun as a bludgeon, the weight of the gun cannot be considered in determining whether the BB gun was a deadly weapon. This is not the precedent set forth in this district. In *Hicks*, this court, in reviewing the sufficiency of the evidence, set out the testimony of the arresting officers that the "toy" gun involved was metal, and that they had "investigated crimes where such objects had been used as bludgeons." The appellate court in *Hicks* also, itself, examined the weapon involved and concluded it was heavy enough to be used as a bludgeon. We found this even though there was no evidence that the robber used or threatened to use the gun as a bludgeon. Houston cites to *Brown* at 788 in arguing this district requires proof the weapon was used as bludgeon. However, *Brown* is a First District case.

{¶20} In the instant case, like in *Hicks*, the trial court examined the weapon and found that it was heavy enough to be used as a bludgeon. The trial court also noted that on the barrel of the gun was an inscription that stated: "Not a toy. Misuse or careless use may cause serious injury or death." The court, relying on this evidence and this court's decision in *State v. Hammond*, 8th Dist. Cuyahoga No. 99074, 2013-Ohio-2466,

concluded the gun was a deadly weapon and overruled defense counsel's motion for acquittal. In *Hammond*, the gun at issue was a plastic toy gun. We concluded it was not a deadly weapon because there was no evidence it was heavy enough to be used as a weapon nor was evidence presented of its ability to cause death.

{¶21} We agree with the trial court that there was sufficient evidence the gun was a deadly weapon as the inscription on the label states that it could cause serious injury or death. The court also found the gun heavy enough to be a bludgeon. Moreover, the evidence showed that Houston placed the gun on the side of the victim's face. It is imaginable that shooting the BB into the side of the victim's face at close range could prove to be fatal. *See State v. Valentin*, 11th Dist. Portage No. 2009-P-0010, 2009-Ohio-6038 (construing the evidence "in a light most favorable to the state, a rational trier of fact could have concluded that one or more shots fired from the BB gun at this close range [gun was pointed at head and neck] was capable of inflicting death"); *State v. Thaler*, 2d Dist. Montgomery No. 21129, 2006-Ohio-4017 (BB gun pointed at the victim's head and neck at close range "was far more vulnerable to life-threatening injury" than if the gun's target was the victim's buttocks).

{¶22} Accordingly, construing the evidence in the light most favorable to the state, under the facts of this case, there was sufficient evidence presented that the BB gun was used as a "deadly weapon." Accordingly, Houston's first assigned error is overruled.

## Manifest Weight of the Evidence

{¶23} In his second assigned error, Houston argues that his conviction for aggravated robbery was against the manifest weight of the evidence.

**{¶24}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997- Ohio-52, 678 N.E.2d 541. In *Thompkins,* the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id*. at ¶ 25.

**{¶25}** An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id*.

**{¶26}** Houston contends the gun was wrongly admitted into evidence because the state failed to establish the chain of custody for the weapon. "Any breaks in the chain of

custody go to the weight afforded to the evidence, not to its admissibility." *State v. Smith*, 8th Dist. Cuyahoga No. 96348, 2011-Ohio-6466, ¶ 37.

{¶27} Here, on cross-examination, Houston admitted that the gun was his. Moreover, Officer Skernivitz, who retrieved the weapon from Houston, stated that he "believed the weapon was marked, tagged, and entered" into evidence. When shown the gun, the officer stated that it looked like the BB gun he retrieved, but he could not say it was the exact one. Additionally, when the victim was shown the gun, he stated that he recognized the weapon as the one Houston put to the victim's face. The victim had in fact handled the gun when he took it from Houston and threw it over the fence. He would have been familiar with the gun. Thus, we conclude the admission of the gun did not create such a manifest injustice that Houston's conviction should be reversed. Moreover, we held in the first assigned error that the fact the BB gun, if fired, could have been fatal because it was held to the victim's face.

{¶28} Houston also argues his testimony was more credible than the alleged victim because Houston suffered a black eye and swollen lip, while the victim's injuries were minor. This evidence was not inconsistent because the victim testified to punching Houston several times in the face, which would account for Houston's injuries. We realize Houston contends the victim was the aggressor. However, when there are two versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the factfinder who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice

inflections, and gestures of the witnesses testifying. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). The court obviously believed the victim's version of events

{¶29} Houston also contends the victim testified the assailant had braids, but the booking photo shows that he did not have braids. However, the victim explained that because Houston was wearing a "doo-rag" during the robbery, he assumed he had braids. Further, Houston admits having contact with the victim, but contends that the victim was the aggressor. Therefore, this is not a case of misidentification.

{¶30} Houston argues that the testimony was inconsistent regarding whether he was walking or running when the officers first saw him. Officer O'Neill testified she saw Houston jogging, then later said he was walking. Officer Skernivitz testified that Houston was running, and Houston stated he was walking. These inconsistencies are inconsequential to Houston's conviction given the victim's testimony.

{¶31} Houston also argues that his conviction was against the manifest weight because the state failed to dust the gun for fingerprints to see if the victim attempted to wrestle the gun from Houston as he contended. This does not constitute an inconsistency. Instead, it goes to the victim's credibility because its only purpose would be to bolster the victim's credibility. Therefore, we defer to the finder of fact to determine if the victim's testimony was credible in spite of the fact the gun was not dusted for fingerprints. Accordingly, Houston's second assigned error is overruled.

## Ineffective Assistance of Counsel

**{¶32}** In his third assigned error, Houston argues that his counsel was ineffective for failing to object to the admission of the gun as evidence because the proper chain of custody had not been established.

**{¶33}** To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

**{¶34}** When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

**{¶35}** In the instant case, Houston acknowledged it was his gun and the victim testified the gun was the one used by Houston. Moreover, as we stated above, even if the gun were not admitted into evidence, there was sufficient evidence that it was used as a deadly weapon by its close proximity to the victim's face. Therefore, any failure to establish the chain of custody was not prejudicial. Accordingly, Houston's third assigned error is overruled.

## Mental Health Docket

**{¶36}** In his fourth assigned error, Houston argues his counsel was ineffective for failing to request the case be transferred to the mental health docket.

**{¶37}** Loc.R. 30.1 of the Court of Common Pleas of Cuyahoga County, General Division, controls the assignment of criminal cases to the mental health docket and provides that "mental health dockets shall include cases where the defendant is deemed to have a confirmed serious mental illness if within the previous six months prior to arraignment, there is a clinical diagnosis of a severe mental illness with a psychotic feature."

**{¶38}** A review of the record does not indicate that Houston has a confirmed serious mental illness. There was no evidence that he was not sane at the time of the alleged acts, and the transcript shows he was competent to stand trial because he appropriately answered the questions he was asked.

**{¶39}** The only evidence regarding Houston's mental health was the fact he took medication for depression and anxiety. There was no evidence that his mental condition had a "psychosis element" to it. Therefore, it does not appear that Houston was eligible for assignment to the mental health docket. Counsel's failure to file a motion to transfer the case to the mental health docket does not fall below an objective standard of reasonable representation. Accordingly, Houston's fourth assigned error is overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART J., CONCUR